IN THE MATTER OF: SUE S. CLARK
POST OFFICE BOX 502, BOONE, NORTH CAROLINA 28607
SS No. 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, APPELLEE
AND
DEPARTMENT OF SOCIAL SERVICES
COURTHOUSE ANNEX, BOONE, NORTH CAROLINA 28607
AND
EMPLOYMENT SECURITY COMMISSION OF NORTH CAROLINA
POST OFFICE BOX 25903, RALEIGH, NORTH CAROLINA 27611, APPELLANTS

No. 7924SC932

(Filed 3 June 1980)

**Master and Servant § 108— unemployment compensation — resignation from work — good cause attributable to employer**

Claimant voluntarily left work as a county social worker for good cause attributable to her employer and was thus entitled to unemployment compensation where she resigned her position because she was instructed by her supervisor to initiate custody proceedings for certain children after she had secured voluntary, revocable Board Home Agreements from the mothers to place their children in the temporary custody of others upon her assurances to the mothers that the children would be returned to the mothers upon

request, and because she felt that the actions she was required to take violated the ethical standards of her profession.

APPEAL by the Department of Social Services and the Employment Security Commission from *Johnson (Clifton E.)*, *Judge*. Judgment entered 3 July 1979 in Superior Court, WATAUGA County. Heard in the Court of Appeals 27 March 1980.

Claimant, a former social worker with the Watauga County Department of Social Services, filed a claim with the Employment Security Commission (Commission) to collect unemployment compensation. The Commission denied claimant's claim for compensation stating that claimant was disqualified from receiving unemployment insurance benefits, because she had left her last job voluntarily and without good cause attributable to her employer.

The Commission's denial of compensation was based on the following findings of fact:

"3. On June 5, 1978, the claimant submitted a letter of resignation to the director of the Department of Social Services, stating that she was resigning her position because, in her opinion, she was being required to act in a manner not consistent with the ethical standards of her profession.

.  .  .  .

5. On May 1, 1978, the claimant's work came under a new supervisor. In the cases of two clients, cases in which the claimant was the assigned social worker, the claimant and the new supervisor disagreed over how the cases should be handled. In both cases, the claimant had induced the parties involved to sign 'boarding home agreements,' to place their children in the temporary care of other people. These agreements are voluntary and provide for children to be placed in foster homes during periods when the parent is incapacitated or otherwise unable to care for them. These agreements are severable at will by the parents.

6. In both of these cases, after having secured these agreements, the claimant's supervisor and the Department director reached the conclusion that the parents involved should not be allowed to regain custody of their children. In at least one of the cases, the claimant was asked to initiate immediate custody proceedings to remove the children in question from their parents' care. These decisions were discussed at meetings during which the claimant, her supervisor, and the director of the Department were present and given an opportunity to voice their opinions.

7. The claimant disagreed with these decisions, although she did not indicate her disagreements to her supervisor during the above mentioned discussions. The claimant quit her job on the basis of these two cases and the basis of her understanding of the above-cited ethical standard."

Claimant appealed the Commission's decision to the Superior Court for judicial review. Judge Johnson entered a judgment wherein he found that: (1) there was no evidence to support the Commission's finding that claimant had not indicated her disagreements with her employer's actions; and (2) the precipitating causes of claimant's resignation were (a) her being ordered to prepare and sign a petition for a temporary custody order on certain children after she, as an agent of the employer and at the employer's direction, had secured a voluntary, revocable Boarding Home Agreement from the mother based upon her assurances to the mother that the children could and would be returned to the mother upon request, and (b) her feelings that the actions she was required to take violated her ethical standards and those of her profession.

Additional findings made by Judge Johnson are not dispositive of this appeal.

Based on the foregoing findings, Judge Johnson reversed and remanded the Commission's decision. The Commission and the Watauga County Department of Social Services appealed.

*V. Henry Gransee, Jr., for petitioner appellant, Employment Security Commission of North Carolina.*

*Stacy C. Eggers III, for petitioner appellant, Watauga County Department of Social Services.*

*Isenhower & Long, by Samuel H. Long III, for respondent appellee.*

ERWIN, Judge.

The question which will dispose of this appeal is whether the claimant voluntarily left work because of good cause attributable to her employer. We hold that she did.

G.S. 96-14(1) disqualifies an individual who has voluntarily left his work, *i.e.*, quit his job, without *good cause attributable to the employer.*

"Good cause" is a reason which would be deemed by reasonable men and women valid and not indicative of an unwillingness to work. *In re Watson,* 273 N.C. 629, 161 S.E. 2d 1 (1968). If a claimant leaves his work voluntarily, but for good cause attributable to the employer, then a claimant is not disqualifed from receiving unemployment benefits under the Employment Security Commission Law. Thus, to determine claimant's entitlement, we must examine her reason for leaving her work.

The Commission found that claimant had induced two clients to sign Boarding Home Agreements to place their children in the temporary care of other people. In the first case, the record indicates that the mother had fled from home with her five minor children because of her husband's drinking. At the time of flight, the mother was ill to the point that she was unable to take care of her children. Claimant had visited the mother in her hospital room and had secured the boarding agreement only upon the assurance that the mother would be able to re-obtain the children and that the agreement was merely a contract to arrange for care for the children while she was incapacitated and unable to care for them.

In re Clark

In the second case, claimant had procured the agreement of a mother, who was subject to psychological breakdowns, for temporary foster care of the mother's child while the mother was in the hospital. Again, this procurement was obtained after assurances that the child could be re-obtained when the mother got out of the hospital.

In both cases, claimant was instructed to initiate custody proceedings by her supervisor, even though she informed the supervisor of the Boarding Home Agreements and her assurances that custody proceedings would not be initiated as a means of obtaining them. Entry of the agreements was in accordance with previous departmental policy. Claimant also informed her supervisor that the children were in good health.

Based upon the foregoing incidents, claimant felt that she could no longer ethically continue her employment with her employer and tendered her resignation.

Our objective view of the foregoing circumstances leads us to believe, and we so hold, that claimant's reason for leaving her work was one which would be deemed by reasonable men and women to be valid and not indicative of an unwillingness to work. Claimant's resignation was clearly attributable to her employer, and the Commission's own findings of fact support this conclusion.

Appellants' argument that there is evidence to support the Commission's finding that claimant failed to try to resolve the conflict, even if true, would not aid them in this appeal. In *In re Werner*, 44 N.C. App. 723, 263 S.E. 2d 4 (1980), we rejected this same argument in the context of failure to exhaust the employer's grievance machinery.

The judgment entered below is

Affirmed.

Judges HEDRICK and ARNOLD concur.