TIMMONS-GOODSON, Judge.
This appeal arises from a claim for unemployment benefits filed by the petitioner, Ozie L. Hall. Petitioner was employed as an administrative assistant at Integrative Care Chiropractic, P.A. ("Integrative Care"), but left employment on 29 January 2002. Upon leaving, he filed a claim for unemployment benefits with the Employment Security Commission of North Carolina ("theCommission"). Petitioner was denied benefits by an adjudicator and petitioner appealed.
This matter was first heard by Appeals Referee T. R. Jenkins on 8 July 2002. The evidence shows the following: On 9 October 2001, petitioner's place of employment, Integrative Care, was burglarized. After the burglary, petitioner's employer, Dr. Steve Cohen, filed a criminal report and a claim with State Auto Insurance claiming losses of over $35,000. Petitioner felt that Dr. Cohen had overstated monetary losses and included items on the insurance claim that were not present in the building during the burglary. The insurance company sent several letters to Dr. Cohen asking for documentation. Dr. Cohen then asked petitioner and several other employees to help him put records together in support of his claims. Petitioner believed Dr. Cohen was asking him to create a false ledger to support Dr. Cohen's claim that $15,000 in cash was in the office when it was burglarized.
Jeffery Galaska, another employee of Integrative Care, confirmed that Dr. Cohen asked Galaska and other employees to photocopy bank statements and receipts of purchases for some of the items listed on the insurance claim. Galaska testified that to his knowledge those items were not stolen. The employees of Integrated Care collectively decided that they were not going to participate in the commission of a felony. According to petitioner, Dr. Cohen gave him an ultimatum saying if petitioner did not help Dr. Cohen get the insurance money, there would not be any money to pay petitioner's salary. The petitioner interpreted this to mean hewould be fired if he did not help prove Dr. Cohen's insurance claims. Petitioner told Dr. Cohen that he was not going to get the documents. As a result, petitioner felt as if he had been fired. Petitioner felt he could no longer stay employed with Integrative Care in good conscience because of Dr. Cohen's attempted insurance fraud. Petitioner became a government witness in a criminal investigation of Dr. Cohen, and therefore, ended his employment on or about 29 January 2002.
On 29 January 2002, petitioner faxed a letter to Integrative Care acknowledging the fact that he was terminated. The faxed letter stated that petitioner was terminated because he would not participate in a crime. Galaska testified that he prepared a check for petitioner during the 31 January 2002 payroll. However, Dr. Cohen refused to sign it stating that petitioner had not worked during that period. A few months later, Dr. Cohen asked Galaska to fill out a form, regarding petitioner, from the Commission that verifies employment. Dr. Cohen asked Galaska to fill out the form and figure out a way to deny the benefits to petitioner.
Dr. Cohen testified that he never asked petitioner to create any ledger to prove the $15,000 in cash was in the office during the burglary. Dr. Cohen stated that he was not trying to commit insurance fraud. The doctor explained the $15,000 was an estimate based on the fact that usually at that time of the month there is between $10,000 and $15,000 in the cash box from his real estate properties. Dr. Cohen said he informed petitioner that because of petitioner's mismanagement of Dr. Cohen's other company, InternetEast, Dr. Cohen could no longer pay petitioner. Dr. Cohen stated that at this point petitioner began threatening to sue and to call agencies on Dr. Cohen. Dr. Cohen contends that there is no merit to the insurance fraud claims because he settled with his insurance company after the petitioner left his employ.
After hearing the testimony and reviewing the record evidence, the appeals referee found and concluded that petitioner failed to meet the burden of showing good cause attributable to the employer for leaving. Petitioner appealed the decision of the appeals referee to the Commission, which affirmed the decision of the appeals referee with one additional finding. Petitioner then filed a petition for judicial review in Pitt County Superior Court. After reviewing the record evidence, Judge W. Russell Duke, Jr. affirmed the decision of the Commission. Petitioner appeals.
On appeal, petitioner argues that the Commission erred in concluding that he was disqualified for benefits for the duration of his unemployment because he did not meet the burden of showing that he left work for good cause attributable to the employer. We disagree.
This Court's standard of review in appeals from decisions of the Employment Security Commission is well established:
An appeal from a decision of the Employment Security Commission raises but two questions for review: (1) whether the evidence before the Commission supports its findings of fact and (2) whether the facts found sustain the Commission's conclusions of law.
In re Department of Crime Control & Public Safety v. Featherston, 96 N.C. App. 102, 103-04, 384 S.E.2d 306, 307 (1989) (citingIntercraft Industries v. Morrison, 305 N.C. 373, 289 S.E.2d 357 (1982)). Accordingly, "[i]f the findings of fact made by the ESC are supported by competent evidence then they are conclusive on appeal." Fair v. St. Joseph's Hospital, Inc., 113 N.C. App. 159, 161, 437 S.E.2d 875, 876 (1993), disc. review denied, 336 N.C. 315, 445 S.E.2d 394 (1994). "However, even if the findings of fact are not supported by the evidence, they are presumed to be correct if the petitioner fails to except." Id. N.C.G.S. § 96-15(h) (2003) provides that "[t]he petition for review shall explicitly state what exceptions are taken to the decision or procedure of the Commission and what relief the petitioner seeks."
N.C.G.S. § 96-14 (1)(2003) provides that an individual will be disqualified for unemployment benefits for the duration of his unemployment if it is determined by the Commission that the individual is unemployed because he left work without good cause attributable to the employer. "Good cause" has been defined as a reason "`that would be deemed by reasonable men and women as valid and not indicative of an unwillingness to work.'" Marlow v. N.C. Employment Security Comm., 127 N.C. App. 734, 736, 493 S.E.2d 302, 303 (1997) (quoting Watson v. Employment Security Comm., 111 N.C. App. 410, 413, 432 S.E.2d 399, 401 (1993)), disc. review denied, 347 N.C. 577, 502 S.E.2d 595 (1998). This Court has defined "attributable to the employer" to mean "produced, caused, created or as a result of actions by the employer." McGaha v. Nancy's Styling Salon, 90 N.C. App. 214, 218, 368 S.E.2d 49, 52, disc. review denied, 323 N.C. 174, 373 S.E.2d 110 (1988). At the outset, we note that petitioner failed to "explicitly" except to any of the Commission's findings of fact. Therefore, the findings of the Commission are binding on appeal. See St. Joseph's Hospital, Inc., 113 N.C. App. at 161, 437 S.E.2d at 876.
In the instant case, the Commission adopted the appeals referee's findings of fact and thereby made the following pertinent findings:
1. Claimant last worked for Integrative Care Chiropractic P.A. on or about January 29, 2002 as an administrative assistant. From March 31, 2002 until June 1, 2002, claimant has registered for work and continued to report to an employment office of the Commission and has made a claim for benefits in accordance with G.S. 96-15(a). The claimant filed a New Initial Claim effective March 31, 2002. The claimant's weekly benefit amount is $396.00. The claimant's maximum benefit amount is $9,108.00.
2. The Adjudicator, Kaye Powell, issued a conclusion under Docket No. 32428 holding claimant disqualified for benefits. Claimant appealed. Pursuant to G.S. 96-15(c), this matter came before Appeals Referee T.R. Jenkins for hearing on July 8, 2002. Present for the hearing: claimant, Ozie Hall; claimant's witness, Jeff Galaska; witness for the employer, Dr. Steven Cohen. The employer was represented by Heath Carroll, Attorney-at-Law.
3. Claimant left this job because he felt that the employer had made the commission of a criminal act a condition of his continued employment.
4. The employer's business was burglarized on October 9, 2001. The employer thereafter filed a criminal report and a claim with its insurance carrier claiming damages/losses in excess [of] $35,000.00.
5. The claimant believed that the losses claimed by the employer were fraudulent. Hebelieved that the employer had overstated his cash losses and had listed as stolen items that had been removed to another location prior to the burglary.
6. The employer asked the claimant to collect receipts and bank statements in support of the claimed losses. The claimant believed that the employer was demanding that he create fake ledgers to support the reported losses. He believed that the employer was asking him to commit insurance fraud.
7. The claimant left the employment effective January 29, 2002. At the time of the claimant's leaving continuing work was available for him with this employer.
8. The employer did not make the Commission aware of any criminal act as a condition of employment. The employer did not ask or require the claimant to perform any criminal acts.
Based on the above findings, the Commission affirmed the appeals referee's conclusion that "[i]n this case, the record evidence and facts found therefrom do not support a conclusion that the claimant has met the burden of showing good cause attributable to the employer for leaving." Accordingly, the Commission decided that "[c]laimant is disqualified for unemployment benefits beginning March 31, 2002 and continuing until claimant qualifies for benefits in accordance with the Employment Security Law."
Though the Commission's findings show that the Commission did consider petitioner's evidence, ultimately the Commission did not believe that Dr. Cohen conditioned petitioner's employment upon his committing any criminal act. To that end, the Commission's findings support a conclusion that petitioner's decision to leave Dr. Cohen's employ was not "good cause attributable to theemployer." See Marlow, 127 N.C. App. at 736, 493 S.E.2d at 303 (quoting Watson, 111 N.C. App. at 413, 432 S.E.2d at 401); McGaha, 90 N.C. App. at 218, 368 S.E.2d at 52. The superior court, therefore, did not err in affirming the decision of the Commission in its entirety.
In light of our conclusion in this regard, the opinion of the superior court is affirmed.
Affirmed.
Judges CALABRIA and LEVINSON concur.
Report per Rule 30(e).